**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON**

**CRIMINAL ACTION NO. 06-55-DLB**

**UNITED STATES OF AMERICA**                                **PLAINTIFF**

**vs.**                      **MEMORANDUM OPINION & ORDER**

**MICHAEL L. WILLIAMS**                                        **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on Defendant's Motion to Suppress. (Doc. #25)  An evidentiary hearing was held on November 20, 2006.  Defendant was present for the hearing and represented by Dennis C. Alerding.  Plaintiff was represented by Assistant U.S. Attorney Tony Bracke.  At the conclusion of the hearing, the motion was submitted and is ripe for the Court's review.

**I.      ISSUE**

At the beginning of the evidentiary hearing, the Court discussed the motion with counsel who agreed that only one issue is before the Court.  More specifically, Williams seeks to suppress evidence seized from his person as a result of a June 3, 2006 warrantless search of his person.  Williams claims that because Sergeant Holstein lacked probable cause to arrest him, the arrest was unlawful, and the fruits of the search should be suppressed.

## II.    FACTS[1]

On June 2, 2006, Sergeant Ken Holstein, the supervisor of the Covington Police Department's crime suppression unit, received a call from a person known to him to be very reliable. During that call, the reliable source reported to Holstein that he/she had observed what he/she believed to be prostitution-related activity near the area known as 15th and Madison Avenue in Covington. According to Holstein, that area is known for drug and/or prostitution related activity. According to the source, an unknown black male, later identified as the Defendant, was observed giving money to a white female. The reliable source also provided Holstein with a description of both suspects, and a description of the vehicle the black male was driving, to wit, a white Dodge Dynasty.

Holstein thereafter responded to the area in an unmarked police car. Upon arrival on the scene, Holstein observed a known prostitute and crack user, Katie Jo Hensley, and a black male walking away from Hensley. Although Holstein did not recognize the black male by name, he matched the description provided by the reliable source. Holstein also recognized him to be an associate of someone named Artemis Jackson. The black male then went behind a nearby building.

A short time later, Holstein observed the black male return and embrace Hensley. Although he did not observe any hand to hand drug transaction between the two, Holstein

---

[1] The facts herein are based on the Court's findings from the testimony of the two witnesses who were called during the evidentiary hearing. The Court found each witness to be highly credible. The only discrepancy between the witnesses involved the approximate time Miss Hensley was transported to the jail after being arrested. Sgt. Holstein testified the events occurred after 8:00 p.m. and Officer Warner recalled transporting her to the jail earlier that same afternoon. Despite this discrepancy, which the Court finds is insignificant, the Court finds both Holstein and Warner are credible.

suspected that a drug sale had taken place. After their embrace, the black male departed toward the white Dodge Dynasty and Hensley walked in the opposite direction, towards Holstein.

Hensley was observed placing something in her mouth as she walked by Holstein. Holstein got out of his vehicle and encountered Hensley, telling her empty her mouth. Hensley complied and spit out a small baggie which was later found to contain crack cocaine. Holstein described it as a $30-$40 rock of crack. Hensley was arrested and later found to be in possession of a crack pipe. She was charged with possession of the crack and drug paraphernalia. Holstein thereafter read Hensley her Miranda rights. When asked by Holstein who had sold her the crack, Hensley did not answer.

Officer Cary Warner transported Hensley to the Kenton County Detention Center (KCDC). Because Warner had prior dealings with Hensley and had developed a rapport with her, Holstein asked Warner if he would inquire of Hensley about the source of the crack cocaine. Once at the KCDC, Warner was able to speak with her about the source of the cocaine she had on her person. According to Warner, Hensley told him that she had purchased the crack from someone she knew only as "Shorty." Warner relayed that information to Holstein.

Upon receiving that information from Warner, Holstein made an effort to locate and identify the individual known to Hensley as "Shorty." These efforts included placing an attempt to locate on the white Dodge vehicle, and checking the police records for prior calls in the area in and around 15th and Madison involving Artemis Jackson and a male black

3

with a last name of Williams.[2]  Holstein's search of Covington's arrest records was successful.  More particularly, Holstein learned that Jackson and a male black named Michael L. Williams had been arrested in May, 2006 and charged with fleeing and evading arrest in and around that same area of Covington.  From that arrest information, Holstein was able to obtain a booking photograph which revealed the same individual Holstein had observed earlier that evening embrace Hensley.

The following morning, Holstein called the state prosecutor to inquire about obtaining an arrest warrant for Michael Williams for trafficking in a controlled substance and informed her of what had occurred the previous day.  The prosecutor advised Holstein that if Williams was observed by him, a probable cause arrest for trafficking was in order.

Holstein thereafter received another telephone call from the same reliable source who had observed Williams receive money from Hensley.  According to the source, Williams was back in the area and was still using the same white Dodge Dynasty.  Upon arrival, Holstein observed Williams going to and from that vehicle several times.

Holstein thereafter requested additional units to the scene because of Williams' history of fleeing and the trafficking charge.  In an effort to avoid a foot chase, Holstein waited until Williams got back into the vehicle.  Once the vehicle had left, Holstein instructed marked units to do a felony traffic stop.  Once the vehicle was stopped, uniformed officers arrested Williams.

A search of his person incident to that arrest revealed several items of contraband, including crack cocaine, scales, a cell phone, money, powder cocaine, and marijuana.

---

[2] The reliable source has also advised Holstein that he/she had observed Artemis Jackson and a subject with a last name of Williams in a fleeing arrest in May, 2006.

4

According to the prosecutor, the crack cocaine found on Defendant's person serves as the basis for the charge in Count Two of the Indictment.

### III.     ANALYSIS

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV.  A warrantless arrest passes muster under the Fourth Amendment when there is probable cause to believe a criminal offense has been or is being committed. *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)).

In determining whether probable cause existed to support a warrantless arrest, a court must inquire whether "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *United States v. Davis,* 430 F.3d 345, 352 (6th Cir. 2005) (quoting *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949)).  Moreover, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Wright,* 16 F.3d 1429, 1438 (6th Cir.) (quoting *Illinois v. Gates,* 462 U.S. 213 (1983)), *cert denied*, 512 U.S. 1243 (1994).

Probable cause for a warrantless arrest exists when officers have, at the moment of arrest, "facts and circumstances within their knowledge and of which they had reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964) (quoting *Brinegar, supra*, 338 U.S. at 175-176).

If the officers have probable cause to effectuate an arrest, they may lawfully search a defendant incident to that arrest.  *See Chimel v. California,* 395 U.S. 752, 762-63 (1969). Thus, a search incident to arrest is valid only if the underlying arrest is itself valid and extends to the arrestee's person and the area within his immediate control.  *Id.* at 763.

In this case, Defendant argues that because Sergeant Holstein's independent observations of him on June 2, 2006 confirmed nothing more than innocent behavior, he lacked probable cause to effectuate an arrest the following day.  Defendant also submits that the word of a known prostitute and drug user (Hensley) whose reliability was unknown to Holstein is entitled to little, if any, weight in assessing probable cause.  Although these facts arguably may have been sufficient to effectuate a traffic stop based on reasonable suspicion, Defendant argues they were insufficient to conduct a felony arrest.  The Court disagrees.

In this case, Sergeant Holstein's actions in directing other officers to effectuate a felony stop and arrest of Defendant on June 3, 2006 did not violate his Fourth Amendment rights because the warrantless arrest was supported by the requisite probable cause.  A finding of probable cause is established by the following facts, all of which occurred prior to the Defendant being arrested:

1. A very reliable confidential source (someone other than Hensley) had advised Holstein that he/she had observed a known prostitute give money to a black male in an area known for prostitution and drug activity.  That same source provides Holstein with a description of both individuals;

2. Upon responding to the area, Holstein observes both individuals, who meet the description provided by the reliable source, in close proximity to each other;

3. Holstein recognizes the female as a known prostitute, Katie Jo Hensley, and the black male as an associate of someone named Artemis Jackson.

       Although Holstein cannot put a name to the face of the black male, he does recognize him as someone he has seen in that area before;

4. Holstein observes the black male walk away to an area behind an adjacent building and return, only to embrace Ms. Hensley;

5. After embracing Ms. Hensley, the black male departs in a white Dodge Dynasty vehicle. Ms. Hensley walks toward Holstein who observes her place something in her mouth;

6. Holstein orders Hensley to spit out the contents of her mouth and a baggie of crack cocaine, estimated by Holstein as a $30-$40 rock, is expelled;

7. After Ms. Hensley is arrested and provided with her Miranda rights, she is transported to the Kenton County Detention Center. During a discussion with the transporting officer, Cory Warner, Hensley told Warner that the person who sold her the drugs was someone known to her as "Shorty." Warner forwards that information to Holstein;

8. Holstein thereafter searches the Covington Police Department arrest records and obtains a booking photograph of Michael Lamar Williams from May, 2006. According to Holstein, Williams and Artemis Jackson had been arrested in that same general area May, 2006 and charged with fleeing and evading. Holstein recognizes the booking photograph of Williams as the same person he had observed earlier that day embracing Ms. Hensley;

9. On June 3, 2006, the same reliable confidential source contacts Holstein and advises him that the same white Dodge Dynasty is in the same general area.

Although Defendant argues that Ms. Hensley's statements were essentially uncorroborated, the facts show otherwise in two important respects. First, Hensley's statement that she bought the drugs from "Shorty" is corroborated by the observations of the very reliable informant who witnessed Hensley provide money to black male. Second, Holstein saw the two individuals separate and embrace a short time later after the Defendant had returned. Although Holstein did not personally observe drugs changing hands, his observations corroborate Hensley's statement to Officer Warner that she obtained the drugs from Shorty.

In applying the applicable legal standards for probable cause to the facts set forth in paragraphs 1-9 herein, the Court concludes that at the moment of Defendant's arrest on June 3, 2006, Sergeant Holstein possessed reasonably trustworthy information that Defendant had sold drugs to Ms. Hensley the previous day. As a result, the arrest was lawful and did not violate the Defendant's Fourth Amendment rights. Accordingly, the search incident to that lawful arrest was valid and the evidence seized during that lawful search is not subject to suppression.

**IV.    CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion to Suppress (Doc. #25) is hereby **denied;**

(2)    The telephone conference scheduled for November 28, 2006 at 1:00 p.m. will remain as previously scheduled;

(3)    The time period from November 9, 2006, through the date of this Order, totaling 12 days, is deemed **excludable time** pursuant to 18 U.S.C. § 3161(h)(1)(F).

This 22nd day of November, 2006.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\ORDERS\CovCrim\2006\06-55-MOO denying MTS.wpd